UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BOBBY J. CLARK, JR.,

        Plaintiff,

   v.

TRANS UNION LLC; EXPERIAN
INFORMATION SOLUTIONS, INC.;
EQUIFAX INFORMATION SERVICES,
LLC; ONEMAIN FINANCIAL GROUP,
LLC; and ALLY FINANCIAL INC.,

        Defendants.

No. 2:24-cv-00783 WBS CKD

MEMORANDUM AND ORDER RE:
EXPERIAN'S MOTION TO COMPEL
ARBITRATION

----oo0oo----

       Plaintiff Bobby Clark brought this action against

defendants Trans Union LLC, Experian Information Solutions Inc.,

Equifax Information Services LLC, OneMain Financial Group LLC,

and Ally Financial Inc., alleging violations of the Fair Credit

Reporting Act, 15 U.S.C. § 1681 et seq., and the California

Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785 et

seq.  Defendant Experian Information Solutions now moves to

compel plaintiff to arbitrate his claims against Experian.

1

1  (Docket No. 43.)

2  I.   <u>Discussion</u>

3          Defendant Experian Information Solutions, Inc. ("EIS")

4  is a credit reporting agency.  (Compl. (Docket No. 1) ¶ 19).  EIS

5  is affiliated with ConsumerInfo.com, Inc., which also does

6  business as Experian Consumer Services (collectively, "CIC/ECS").

7  (<u>See</u> Smith Decl. (Docket No. 32-4 at 1-5) ¶ 1-2.)  Both EIS and

8  CIC/ECS are wholly-owned subsidiaries of Experian Holdings, Inc.

9  (<u>Id.</u> ¶ 2.)  Plaintiff signed up for a credit-monitoring account

10 via the CIC/ECS website (<u>see</u> Clark Decl. (Docket No. 44-1) ¶ 4;

11 Smith Decl. ¶ 3),[1] which had Terms of Use containing an

12 arbitration agreement.

13         Plaintiff alleges that in 2023, he paid off outstanding

14 balances on several past-due accounts, which Experian continued

15 to report as outstanding.  (Compl. ¶¶ 53-59, 60-65.)  Despite

16 disputes filed by plaintiff, Experian did not correct the account

17 balances on plaintiff's credit reports.  (<u>See id.</u> ¶¶ 66-68, 77,

18 170, 173.)  Plaintiff's claims allege that Experian "failed to

19 adequately review all of the information provided to it" and

20 "failed to conduct a reasonable reinvestigation" of plaintiff's

21 disputes.  (<u>Id.</u> ¶¶ 78-79, 169, 172.)

22         The Federal Arbitration Act ("FAA") provides that a

23 written provision in a "contract evidencing a transaction

24 involving commerce to settle by arbitration a controversy

25

26         [1]    Plaintiff concedes that he signed up for an "Experian
   account," but does not specify how he did so. (<u>See</u> Clark Decl. ¶
27 4.)  Defendant's declaration states that CIC/ECS business records
   show plaintiff signed up for an account via the CIC/ECS website
28 (Smith Decl. ¶ 3), which plaintiff does not dispute.

1  thereafter arising out of such contract . . . shall be valid,

2  irrevocable, and enforceable, save upon such grounds as exist at

3  law or in equity for the revocation of any contract."  9 U.S.C.

4  § 2.  The FAA "leaves no place for the exercise of discretion by

5  a district court, but instead mandates that district courts shall

6  direct the parties to proceed to arbitration on issues as to

7  which an arbitration agreement has been signed."  Dean Witter

8  Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

9        "[T]he FAA limits courts' involvement to determining

10  (1) whether a valid agreement to arbitrate exists and, if it

11  does, (2) whether the agreement encompasses the dispute at

12  issue."  Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th

13  Cir. 2008) (internal quotation marks omitted).

14       A.    Existence of Arbitration Agreement

15        Plaintiff argues that the declaration of CIC/ECS

16  employee Dan Smith fails to establish the existence of an

17  arbitration agreement between the parties.[2]  This argument lacks

18  merit.

19        According to his declaration, Mr. Smith has been the

20  Director of Product Operations at CIC/ECS since January 2010.

21 ─────────────

22        [2]    Plaintiff does not appear to meaningfully dispute the
   veracity of Mr. Smith's declaration.  Rather, plaintiff objects
   to the declaration on the ground that Mr. Smith lacks personal
23  knowledge.  However, this type of objection is "duplicative of
   the summary judgment standard itself."  Alvarez v. T-Mobile USA,
24  Inc., 2:10-cv-2373 WBS GGH, 2011 WL 6702424, at *3 (E.D. Cal.
   Dec. 21, 2011).  "Statements based on improper legal conclusions
25  or without personal knowledge are not facts and can only be
   considered as arguments, not as facts, on a motion for summary
26  judgment.  Instead of challenging the admissibility of this
   evidence, lawyers should challenge its sufficiency."  Id.
27  Because plaintiff's evidentiary objection is "superfluous" at
28  this stage, it is hereby OVERRULED.  See id.

3

1    (Smith Decl. ¶ 1.)  His job duties require that he be familiar

2    with "how consumers enroll, the forms they must complete to

3    enroll, as well as the Terms of Use governing such services,"

4    along with the "electronic databases that store consumer

5    enrollment information, including the webpages a consumer would

6    have encountered to complete their enrollment . . ., the

7    personally identifiable information entered when enrolling, which

8    links or buttons the consumer clicked on, and date and time of

9    the consumer's acceptance of the Terms of Use."  (Id.)  Mr. Smith

10   states that he reviewed the CIC/ECS database and found that

11   plaintiff signed up for an account on February 21, 2018.  (Id. ¶

12   3.)  He also describes the webpage plaintiff was presented with

13   in order to enroll.  (See id.)

14        As the Ninth Circuit has explained, "an enforceable

15   contract will be found . . . if: (1) the website provides

16   reasonably conspicuous notice of the terms to which the consumer

17   will be bound; and (2) the consumer takes some action, such as

18   clicking a button or checking a box, that unambiguously manifests

19   his or her assent to those terms."  Berman v. Freedom Fin.

20   Network, LLC, 30 F.4th 849, 856 (9th Cir. 2022).

21        Under this standard, the Smith declaration is plainly

22   sufficient to establish that plaintiff "affirmatively

23   acknowledge[d] the agreement."  See Nguyen v. Barnes & Noble

24   Inc., 763 F.3d 1171, 1176 (9th Cir. 2014).  The declaration

25   explains that on the webpage where plaintiff enrolled,

26   "[i]mmediately below the boxes to enter and confirm his password,

27   was the following disclosure: 'By clicking "Submit Secure Order":

28   I accept and agree to your Terms of Use Agreement, as well as

                                    4

1   acknowledge receipt of your Privacy Policy and Ad Targeting
2   Policy.'"  (Smith Decl. ¶ 3.)  Based on the screenshot of the
3   website attached to the declaration, this disclosure was set in
4   bolded black typeface and was approximately the same font size as
5   other text on the webpage.  (See Docket No. 43-2 at 9.)  The
6   phrase "Terms of Use Agreement" was "off-set in blue text and, if
7   clicked, would have presented the consumer with the full text of
8   the agreement" (i.e., the full agreement was hyperlinked).
9   (Smith Decl. ¶ 4.)  The "Submit Secure Order" button was
10  "immediately below the disclosure."  (Id.)  This formatting made
11  the Terms of Use disclosure "reasonably conspicuous."  See
12  Berman, 30 F.4th at 856-57.

13          The Smith declaration also explains that plaintiff did,
14  in fact, click the "Submit" button, as he "would not have been
15  able to successfully enroll" unless he did so.  (Smith Decl. ¶
16  4.)  And it is undisputed that plaintiff created an Experian
17  account.  (See Clark Decl. ¶ 4.)  Clicking a button is a
18  sufficient manifestation of assent where, as here, "the user is
19  explicitly advised that the act of clicking will constitute
20  assent to the terms."  See Berman, 30 F.4th at 857.

21          District courts routinely find declarations of
22  corporate employees like the one at issue here sufficient to
23  establish the existence of an arbitration agreement.  See, e.g.,
24  Demaria, 2023 WL 6390151, at *10 (declaration explaining "access
25  to records maintained by [defendant] in its usual course of
26  business, the process by which [users] created profiles and login
27  information" on the online platform, and "how [p]laintiff would
28  have accessed and signed" the arbitration agreement was

sufficient to "establish [the declarant's] personal knowledge" that there was a "valid" agreement between the parties).  Indeed, Judge Mendez recently held that a valid agreement to arbitrate existed based on a substantially similar declaration provided by Mr. Smith, see Scribner v. Trans Union LLC, No. 2:23-cv-02722 JAM CKD, 2024 WL 3274838, at *3–5 (E.D. Cal. July 2, 2024), as have several other judges in this District in considering similar declarations by Experian employees, see Saucedo v. Experian Info. Sols., Inc., No. 1:22-cv-01584 ADA HBK, 2023 WL 4708015, at *4–6 (E.D. Cal. July 24, 2023); Capps v. JPMorgan Chase Bank, N.A., No. 2:22-cv-00806 DAD JDP, 2023 WL 3030990, at *4–5 (E.D. Cal. Apr. 21, 2023).

In rebuttal to the Smith declaration, plaintiff's declaration states the following: (1) "When I signed up for my online Experian account, I did not click anything that I recall indicating that I would be waiving my right to a jury"; and (2) "I did not see an arbitration agreement, or any mention of an arbitration agreement, when I signed up for my online Experian account."  (Clark Decl. ¶¶ 6-7.)

Even taken as true, these statements do not create a genuine dispute of fact.  Plaintiff does not dispute that he visited the webpage in question, that he signed up for an account, that the webpage appeared as defendant describes it, or that he had an opportunity to review the Terms of Use.  And plaintiff "cannot avoid the terms of the contract on the ground that he failed to read it before signing, especially when he had a legitimate opportunity to review it."  Lee v. Ticketmaster L.L.C., 817 F. App'x 393, 395 (quoting Marin Storage & Trucking,

1   Inc. v. Benco Contracting & Eng'g, Inc., 89 Cal. App. 4th 1042,

2   1049 (1st Dist. 2001), and Mohamed v. Uber Techs., Inc., 109 F.

3   Supp. 3d 1185, 1198 (N.D. Cal. June 9, 2015)) (cleaned up); see

4   also Cordas v. Uber Techs., Inc., 228 F. Supp. 3d 985, 990 (N.D.

5   Cal. 2017) (enforcing arbitration agreement where employee's

6   declaration stated that user "could not have created an Uber

7   account . . . without [accepting the Terms & Conditions]," and

8   plaintiff "offer[ed] no testimony or evidence regarding what he

9   did see on his screen" or otherwise rebutted the declaration).

10          In arguing that there is no valid arbitration

11   agreement, plaintiff relies on several cases that are both non-

12   binding and inapposite.[3]  Plaintiff does cite two cases that are

13   directly on point, wherein out-of-circuit district courts

---

14          [3]    See Sgouros v. TransUnion Corp., 817 F.3d 1029, 1035
15   (7th Cir. 2016) ("the web pages on which [plaintiff] completed
     his purchase contained no clear statement that his purchase was
16   subject to any terms and conditions of sale," but rather
     "actively misl[ed]" plaintiff by indicating that "clicking on the
17   box constituted his authorization for TransUnion to obtain his
     personal information") (emphasis in original); Lamonaco v.
18   Experian Info. Sols., Inc., No. 6:23-cv-1326 PGB LHP, 2024 WL
     1703112, at *5 (M.D. Fla. Apr. 19, 2024) (declaration stating
19   that plaintiff would not have been able to use Experian service
     without assenting to terms of use was insufficient to establish
20   existence of agreement where plaintiff did not "admit to
     accessing the defendant's website or to signing up for an
21   account"); Austin v. Equifax Info. Servs., LLC, No. 3:22-cv-707,
     2023 WL 8646275, at *7 (E.D. Va. Dec. 14, 2023) ("[n]othing in
22   [Experian employee's] job description disclosed personal
     knowledge of how the system at issue works," his declaration did
23   not identify the Experian business records relied upon, and he
     refused to testify before the court concerning the content of the
24   declaration); Dillon v. BMO Harris Bank, N.A., 173 F. Supp. 3d
     258, 265-66 (M.D.N.C. 2016) (declaration company relied upon had
25   several deficiencies, including that declarant was not an
     employee, did not explain how he became familiar with company's
26   practices, and did not aver that the webpage at issue was
27   presented to plaintiff).

28

concluded that Experian had failed to establish the existence of an arbitration agreement.  See Cox v. Consumerinfo.com, Inc., No. 3:24-cv-0033, 2024 WL 3625859, (S.D. W. Va. Aug. 1, 2024); Newton v. Experian Information Solutions, Inc., No. 6:23-cv-059, 2024 WL 3451895 (S.D. Ga. July 18, 2024).  Notably, these decisions (both pending appeal) relied on Sgouros, which, as indicated in footnote 3, is inapposite.  For the reasons discussed herein, the court finds these decisions unpersuasive and against the weight of authority.

Accordingly, the court concludes that the parties are bound by the Terms of Use Agreement linked on the webpage where plaintiff created his account.

B.    Scope of Arbitration Agreement

"Although gateway issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator."  Momot v. Mastro, 652 F.3d 982, 987 (9th Cir. 2011).  Courts may "assume that the parties agreed to arbitrate arbitrability" only if "there is clear and unmistakable evidence that they did so."  Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 72 (2019).

An "express agreement" to arbitrate arbitrability, evinced by a contract's "language[] delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause," constitutes clear and unmistakable evidence.  Momot, 652 F.3d at 988 (citations omitted).  Where such an express delegation provision exists, unless a party opposing enforcement of the agreement "challenge[s] the delegation provision specifically, [courts]

8

1  must treat it as valid . . . ."  Rent-A-Center, W., Inc. v.

2  Jackson, 561 U.S. 63, 72 (2010).

3        "When the parties' contract delegates the arbitrability

4  question to an arbitrator, a court may not override the contract,

5  even if the court thinks that the arbitrability claim is wholly

6  groundless."  Henry Schein, 586 U.S. at 63.  "In those

7  circumstances, a court possesses no power to decide the

8  arbitrability issue."  Id.

9        Here, both the original and amended Terms of Use

10  Agreement state that "[all] issues are for the arbitrator to

11  decide," including "the scope and enforceability of this

12  arbitration provision."  (See Def.'s Ex. 3 (Docket No. 43-2 at

13  10-41) at 7; Def.'s Ex. 4 (Docket No. 43-2 at 42-57) at 3.)  This

14  provision expressly delegates the question of arbitrability to

15  the arbitrator, and plaintiff does not argue otherwise.

16  Accordingly, the court concludes that it must compel arbitration

17  on the question of whether the agreement encompasses plaintiff's

18  claims.  See Capps, 2023 WL 3030990, at *6 (concluding that the

19  parties "clearly and unmistakably delegated the question

20  regarding the scope of the [agreement] to the arbitrator" where

21  Experian arbitration agreement contained identical delegation

22  language); Scribner, 2024 WL 3274838, at *5 (same).

23  II.  Conclusion

24        Because the evidence before the court indicates that a

25  valid agreement to arbitrate exists and the agreement clearly and

26  unmistakably delegates the issue of arbitrability to the

27  arbitrator, the court must compel the claims against Experian to

28  be submitted to arbitration.  See Dean Witter, 470 U.S. at 218.

1          IT IS THEREFORE ORDERED that Experian's motion to

2    compel arbitration (Docket No. 43) be, and the same hereby is,

3    GRANTED.  IT IS FURTHER ORDERED that the claims against Experian

4    Information Solutions, Inc. are STAYED pending arbitration.[4]

5    Dated:  September 3, 2024

     WILLIAM B. SHUBB
     UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

       [4]     This partial stay does not affect the claims brought
28    against any other defendants.

                              10