1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                           ----oo0oo----

11

12  BOBBY J. CLARK, JR.,                    No. 2:24-cv-783 WBS CKD

13              Plaintiff,

14       v.                                 MEMORANDUM AND ORDER RE:
                                            ALLY'S MOTION TO COMPEL
15  TRANS UNION LLC; EXPERIAN               ARBITRATION
    INFORMATION SOLUTIONS, INC.;
16  EQUIFAX INFORMATION SERVICES,
    LLC; ONEMAIN FINANCIAL GROUP,
17  LLC; and ALLY FINANCIAL INC.;

18              Defendants.

19

20                           ----oo0oo----

21          Plaintiff Bobby J. Clark, Jr. ("plaintiff") brought

22  this action against multiple entities, alleging violations of

23  credit reporting statutes.  (Docket No. 1.)  One of those

24  entities is defendant Ally Financial, Inc. ("Ally"), which moves

25  to compel arbitration and stay the matter as to itself pending

26  arbitration.  (Docket No. 85.)[1]

27  _____

28          [1]   The court previously granted a motion to compel
    arbitration by co-defendant Experian Information Solutions, LLC,

                                  1

1    I.   Background

2            Ally "is a bank holding company with its headquarters

3    in Detroit, Michigan."  (Docket No. 1 at ¶ 24.)  Ally is

4    incorporated in Delaware.  (Docket No. 92-3.)  On October 21,

5    2021, Ally acquired Fair Square Financial Holdings LLC and its

6    subsidiaries, including Ollo Card Services ("Ollo").  (Docket

7    No. 85-1 at ¶¶ 2, 6.)  The acquisition closed on December 1,

8    2021.  (Id.)

9            On April 24, 2022, plaintiff applied for an Ollo

10   Rewards credit card, which Ollo approved that same day.  (Id. at

11   ¶ 7.)  Shortly thereafter, the Bank of Missouri issued plaintiff

12   the card with a cardmember agreement ("Ollo Agreement")

13   containing its terms of service.  (Id.)  Plaintiff used the card

14   between June and August 2022.  (Id. Ex. B at 13, 17.)  On August

15   25, 2022, plaintiff signed up for a debt consolidation program to

16   consolidate his debt, and in that process the card was paid off.

17   (Docket No. 92-2 at ¶¶ 5-8.)

18           Sometime between September 23, 2022, and September 28,

19   2022, Ally notified plaintiff that it had acquired Ollo and his

20   credit card account.  (Docket No. 85-1 at ¶ 12.)  In that time,

21   Ally also issued an amended cardholder agreement ("Ally

22   Agreement") to reflect its acquisition of Ollo.  (Id.)  Aside

23   from the nominal change in counterparties, the only other

24   apparent difference between the two agreements which has any

25   relevance to this motion is that the Ollo Agreement's choice of

26   _____

27   and staying the claims against it.  (Docket No. 59.)

28                                      2

1  law provision names Missouri while the Ally Agreement designates

2  Utah as its choice of law.[2]  (Docket No. 85-1 at ¶¶ 10, 15.)

3       Plaintiff asserts a single claim against Ally under

4  15 U.S.C. § 1681s-2(b).  (Docket No. 1 at ¶¶ 224-229.)  The crux

5  of this claim is that Ally incorrectly reported the account for

6  plaintiff's Ollo Rewards credit card as past due despite

7  plaintiff paying it off through debt consolidation.  (Id.

8  at ¶¶ 60-65, 110-20, 152-55, 192, 224-29.)

9  II.  Legal Standards

10      The Federal Arbitration Act ("FAA") provides that an

11 arbitration agreement "shall be valid, irrevocable, and

12 enforceable, save upon such grounds as exist at law or in equity

13 for the revocation of any contract."  9 U.S.C. § 2.  The FAA

14 "mandates that district courts shall direct the parties to

15 proceed to arbitration on issues as to which an arbitration

16 agreement has been signed."  Dean Witter Reynolds, Inc. v. Byrd,

17 470 U.S. 213, 218 (1985).

18      "The FAA limits courts' involvement to 'determining

19 (1) whether a valid agreement to arbitrate exists and, if it

20 does, (2) whether the agreement encompasses the dispute at

21 issue.'"  Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th

22 Cir. 2008) (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc.,

23 207 F.3d 1126, 1130-31 (9th Cir. 2000)) (capitalization altered).

24 In doing so, the court must "rely on the summary judgment

25

26      [2]    Where the cardmember agreements, including their
   arbitration provisions, are substantially similar, the court only
27 quotes the Ollo Agreement's language.  Also, the court uses the
   phrases "arbitration provision" and "arbitration agreement"
28 interchangeably.

3

1    standard" to resolve genuine disputes of material fact.  <u>Knapke</u>

2    <u>v. PeopleConnect, Inc.</u>, 38 F.4th 824, 831 (9th Cir. 2022).

3          The Ollo Agreement states that "all disputes against us

4    and/or related third parties shall be resolved by binding

5    arbitration only. . . . If either you or we elect to pursue any

6    claim by either you or us against the other, then the claim shall

7    be resolved exclusively by arbitration."  (Docket No. 85-1 Ex. A

8    at 11 (capitalization altered).)  It defines "claim" as "any

9    claim, dispute or controversy arising from or relating in any way

10   to this Agreement or your account, or their establishment, or any

11   transaction or activity on your account."  (<u>Id.</u>)  Ally seeks to

12   enforce this arbitration agreement in the instant motion.

13   III. <u>Discussion</u>

14        A.   <u>Illusoriness</u>

15          "The essential elements of any contract, including one

16   for arbitration, are offer, acceptance, and bargained for

17   consideration."  <u>Baker v. Bristol Care, Inc.</u>, 450 S.W.3d 770, 774

18   (Mo. 2014) (capitalization altered).  Plaintiff argues that the

19   Ollo Agreement is void because of Ally's unilateral right to

20   amend the terms of the agreement, which he claims makes the

21   agreement illusory.  Under Missouri law, a contract where a party

22   retains "the unqualified right" to unilaterally amend its terms

23   may lack consideration and become "illusory."  <u>Johnson v. Menard</u>,

24   632 S.W.3d 791, 797-98 (Mo. Ct. App. 2021).

25          The policy rationale for this principle in Missouri

26   contract law is the possibility that the party with "the

27   unqualified right to unilaterally modify" the contract may

28   retroactively modify the agreement to evade its contractual

4

1    obligations when those obligations become inconvenient.  Id.

2    Missouri law affords an exception to this unilateral modification

3    rule for contract for amendments which "are prospective in

4    application" and give the counterparty "reasonable advance

5    notice."  Patrick v. Altria Grp. Distrib. Co., 570 S.W.3d 138,

6    144 (Mo. Ct. App. 2019).

7         The Ollo Agreement states that Ollo or Ally "can amend

8    the terms of this Agreement by changing terms, adding new terms,

9    or deleting terms from this Agreement at any time.  We will give

10   you notice of an amendment as required by applicable law."

11   (Docket No. 85-1 Ex. A at 10.)  It continues that "any amendment

12   of this agreement will become effective at the time stated in our

13   notice.  Unless we state otherwise, the amended terms will apply

14   to all outstanding balances on your account as well as to new

15   transactions to the extent permitted by applicable law."  (Id.)

16   The Ollo Agreement's amendment section is silent on whether it

17   applies to the arbitration provision.

18        Notwithstanding plaintiff's argument that the Ollo

19   Agreement is illusory, he does not claim that Ally exercised the

20   unilateral modification provision in any way that was prejudicial

21   to him and has not persuaded the court that the Ollo Agreement is

22   void ab initio because of this provision.  See Donelson v.

23   Ameriprise Fin. Servs., Inc., 999 F.3d 1080, 1089-91 (8th Cir.

24   2021), where the Eighth Circuit applied Missouri law and enforced

25   the defendant brokerage's arbitration agreement over the

26   plaintiff investor's argument that it was illusory due to the

27   brokerage retaining the unilateral right to modify it.  The

28   Eighth Circuit reasoned that the brokerage providing and

5

1  servicing the plaintiff's investment account constituted

2  consideration for the underlying agreement.  Id. at 1090-91.  Its

3  analysis in Donelson applies equally here to the Ollo agreement.

4  See id. at 1089-91.

5       Therefore, the court rejects plaintiff's argument that

6  the arbitration provision is illusory under Missouri state law.

7       B.    Unconscionability

8       Plaintiff next argues that the Ollo Agreement Ally

9  seeks to enforce is unconscionable due to its arbitration

10  provision and unilateral modification provision.

11  "Unconscionability is defined as an inequality so strong, gross,

12  and manifest that it must be impossible to state it to one with

13  common sense without producing an exclamation at the inequality

14  of it.  The unconscionability doctrine 'guards against one-sided

15  contracts, oppression, and unfair surprise.'"  Id. at 1091

16  (citation omitted) (quoting Eaton v. CMH Homes, Inc., 461 S.W.3d

17  426, 432 (Mo. 2015)).

18       In Donelson, 999 F.3d at 1089-91, the Eight Circuit

19  rejected plaintiff's unconscionability challenge where the

20  agreement at issue was arguably more unconscionable than the Ollo

21  Agreement because it made the investor arbitrate claims against

22  the brokerage but not vice-versa.  See id. at 1090-91.  At

23  minimum, the arbitration provision in the Ollo Agreement requires

24  either party to arbitrate claims against the other. (See Docket

25  No. 85-1 Ex. A at 11.)

26       While the Ninth Circuit does not appear to have applied

27  Missouri law in similar circumstances, it has rejected

28  unconscionability challenges in instances where a plaintiff

6

1    consumer has challenged the defendant's arbitration agreement

2    under the laws of different states.  See, e.g., Patrick v.

3    Running Warehouse, LLC, 93 F.4th 468, 479-80 (9th Cir. 2024);

4    Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1032-33 (9th Cir.

5    2016).

6         For example, the Ninth Circuit recently held in a

7    dispute between retailers of sporting goods and customers that

8    "the presence of a unilateral modification provision, without

9    more, does not render a separate arbitration clause at all

10   substantively unconscionable" under California law.  Running

11   Warehouse, 93 F.4th at 479-80.  In doing so, the Ninth Circuit

12   followed its prior reasoning in Tompkins v. 23andMe, Inc., 840

13   F.3d at 1032-33, where it came to the same conclusion regarding

14   the alleged unconscionability of a contract containing both

15   unilateral modification and arbitration provisions.  There the

16   Ninth Circuit held that "although we have held that a unilateral

17   modification provision itself may be unconscionable, we have not

18   held that such an unconscionable provision makes the arbitration

19   provision or the contract as a whole unenforceable."  Id. at

20   1033.  The same reasoning applies to the Ollo Agreement here.

21        Regardless, the parties delegated adjudication of

22   contractual challenges against the Ollo and Ally Agreements

23   themselves such as lack of assent or consideration and

24   unconscionability to the arbitrator.  (See Docket No. 85-1 Ex. A

25   at 11.)  The Ollo Agreement's arbitration provision states that

26   "claims regarding the applicability of this arbitration provision

27   or the validity of the entire Agreement shall be resolved

28   exclusively by arbitration."  (Id. at 11 (capitalization

1  altered).)  Such delegation is sufficient to compel arbitration

2  of his claim against Ally.  See Running Warehouse, 93 F.4th at

3  479-80 (compelling arbitration because parties agreed to delegate

4  arbitrability to arbitrator).

5        C.    Assent

6            Plaintiff next argues that he never assented to the

7  Ally Agreement.  (See Docket No. 92-2 at ¶¶ 4-8.)  Plaintiff's

8  reasoning is that he has not used the card since August 25, 2022,

9  which predates Ally's acquisition of Ollo.  (See id.)  As a

10  result, plaintiff never used the card while the Ally Agreement

11  was in effect, so its terms do not apply to him, in his view.

12            But plaintiff's assent to the Ally Agreement is not

13  necessary to compel arbitration of his claim against Ally.  The

14  Ollo Agreement makes clear that the exclusive means of accepting

15  it are (1) not cancelling the "account within 30 days after

16  receiving a card," or (2) using the account in any way, such as

17  by making purchases using the card. (Docket No. 85-1 Ex. A at 8

18  (capitalization altered).)  This means that plaintiff accepted

19  the Ollo Agreement, including its arbitration provision, by using

20  the card between June and August 2022, and by not closing the

21  account afterwards.  (See Docket No. 92-2 at ¶ 8.)

22            In addition, the Ollo Agreement anticipates Ally's

23  acquisition of Ollo by including Ollo's "employees, affiliates,

24  beneficiaries, agents . . . and assigns" as potential enforcers

25  of its arbitration agreement and clarifying that "the

26  purchaser(s) of any balances of your account are express third-

27  party beneficiaries of this arbitration provision and are

28  entitled to enforce it to the same extent as if they were a party

8

1    to this agreement." (Id. (cleaned up).) As such, plaintiff's

2    acceptance of the Ollo Agreement survives Ally's acquisition of

3    Ollo, and plaintiff's argument that he never assented to the Ally

4    Agreement fails.

5          D.   Other Arguments

6          Plaintiff also argues that Ally's alleged non-

7    compliance with formalities set out in federal and Delaware

8    statutes extinguishes its right to compel arbitration; that the

9    Frantz declaration submitted by Ally is inadmissible due to its

10   lack of foundation and her lack of personal knowledge; and that

11   Ally waived any right to compel arbitration by waiting ten months

12   after being served with the complaint to move to compel

13   arbitration.  The court finds each of these arguments to be

14   without merit.  Plaintiff fails to cite any binding authority why

15   any of the cited statutes preclude arbitration.  See, e.g.,

16   15 U.S.C. §§ 7001(c), 7006; 5 Del. Code § 952(a).  Franz's

17   declaration reflects her personal knowledge and lays a proper

18   foundation for her testimony.  (See Docket No. 59 at 3-6 & n.2.)

19   And Ally did not make "an intentional decision not to move to

20   compel arbitration."  See Armstrong v. Michaels Stores, Inc.,

21   59 F.4th 1011, 1014-5 (9th Cir. 2023).

22         IT IS THEREFORE ORDERED that Ally's motion to compel

23   arbitration (Docket No. 85) be, and the same hereby is, GRANTED.

24   IT IS FURTHER ORDERED that the claim against Ally is STAYED

25   pending arbitration.  Because all claims in this case have been

26   dismissed or stayed, the Clerk shall close this file

27   administratively, subject to it being reopened upon the

28   application of any party after arbitration has been fully

completed.

Dated:  March 3, 2025

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE